## WALTER S. HURD

### *v.*

### ED. ASCHERMAN *et al.*

*Filed at Ottawa March 27, 1886.*

1. CHANCERY—*retaining a case for all purposes.* Where a court of equity rightfully obtains jurisdiction of a suit, it will retain it for all purposes germain to the subject matter of the original bill, although some of the matters alleged therein may have ceased to be matters of contention.

2. SAME—*multifariousness.* A creditor's bill seeking relief against different defendants, for separate and distinct matters, by setting aside different

conveyances to different persons, and a judgment confessed and a chattel mortgage alleged to be fraudulent, is not obnoxious to the charge of multifariousness.

3. SAME—*hearing without replication.* Where a decree finds that the cause was heard on the pleadings, etc., including a replication, the decree at variance with the answer will not be reversed merely because no replication appears in the transcript, but leave will be given to file one *nunc pro tunc.*

4. SAME—*evidence to overcome sworn answer.* A sworn answer to a bill in chancery must be taken as true unless overcome by the testimony. Where such answer sets up a material fact responsive to the bill, which is denied by two witnesses, and is sustained by the testimony of the defendant answering and another defendant, they all being equally credible, it can not be said the answer is overcome.

5. FRAUDULENT CONVEYANCE—*extent of liability of fraudulent grantee or mortgagee.* A party who takes a chattel mortgage, which is fraudulent as to creditors of the mortgagor, on creditor's bill setting the mortgage aside, should be charged only with what he received for the property mortgaged, or, at most, with what he might with reasonable diligence have made out of the property that came to his hands. He should not be charged with property embraced in the mortgage that did not belong to the mortgagor, and which was claimed by others.

6. ERROR—*not assigned, not considered.* Where errors and cross-errors are assigned in the Appellate Court, and the decree reviewed is affirmed in all respects, and the appellant in that court again appeals to this court, and he alone assigns errors, no objections to the original decree can be considered in behalf of the appellees. Failing to assign cross-errors to the ruling of the Appellate Court, it will be presumed they are satisfied.

APPEAL from the Appellate Court for the Second District; —heard in that court on appeal from the Circuit Court of Knox county; the Hon. JOHN J. GLENN, Judge, presiding.

Messrs. J. J. & G. TUNNICLIFF, for the appellant:

The bill is multifarious. It seeks to set aside deeds made to different persons for separate pieces of property, and which have no connection with each other. On bill against Hurd to set aside a deed to him, the right to set aside a deed to another person is not involved. 1 Daniell's Ch. Pl. and Pr. 335; Cook's Eq. 182; *Supervisors* v. *State's Attorney,* 31 Ill. 74.

The answer, being under oath, can not be overcome or disproved except by two witnesses, or one witness, with strong

corroborating circumstances. *Phelps* v. *White*, 18 Ill. 41; *Myers* v. *Kenzie*, 26 id. 36; *Russell* v. *Russell*, 64 id. 250; *Wellday* v. *Webster*, 42 id. 108; *Weightman* v. *Hunt*, 37 id. 123.

But in any event the answer must be taken as true, because no replication was filed. *Chambers* v. *Rowe*, 36 Ill. 171; *Trout* v. *Emmons*, 29 id. 437.

Reynolds had the right to prefer Hurd, who was a creditor, and such preference will not render the transaction fraudulent. *Tomlinson* v. *Matthews*, 98 Ill. 178; *Goemble* v. *Arnett*, 100 id. 34; *Axtell* v. *Cullen*, 3 Bradw. 537; *Gray* v. *St. John*, 35 Ill. 222.

Fraud is never presumed, but must be shown. *Ward* v. *Moore*, 7 Bradw. 134; 8 id. 322.

Something more than suspicions is required to prove fraud. The evidence must be clear and cogent. (*Shinn* v. *Shinn*, 91 Ill. 477.) The purchaser must also participate in the fraudulent purpose. *Ewing* v. *Runkle*, 20 Ill. 448; *Brown* v. *Riley*, id. 85; *Wilson* v. *Pearson*, 26 id. 38; *Myers* v. *Kenzie*, id. 36.

Messrs. Williams, Lawrence & Bancroft, and Mr. W. B. Bradford, for the appellees:

Hurd was a proper and necessary party to the bill, even as to the Benton property, as he claimed an interest therein under the lien of his judgment. He obtained affirmative relief on cross-bill, and hence can not be heard to say that he was improperly joined as a defendant in the original bill.

Replications were filed to the answers, and the record shows that the cause was heard upon bill, answers, replications and proof.

Counsel also reviewed and discussed the evidence at some length, contending that it established fraud in the several conveyances from Reynolds to Hurd, and Mrs. Benton, and also the judgment in favor of Hurd, and the chattel mortgage to him.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

This case, as it now comes before the court, is much less complicated than when it was heard either in the circuit or Appellate Court. Many of the questions litigated in those courts have not been assigned for error in this court, and are therefore not now before it for consideration. It will be necessary, however, to state briefly the substance of the record concerning some of them, in order to a clearer understanding of the questions presented for decision.

The bill is the ordinary creditors' bill, and was brought by Ed. Ascherman and Herman Signitz, in the circuit court of Knox county, against Leander B. Reynolds, E. B. Benton, Walter S. Hurd, and others alleged to have some interest in the subject matter of the litigation, as judgment creditors of the common debtor or otherwise. These creditors of the failing debtor, on petition, by leave of the court, became co-complainants with the original complainants, but it will not be necessary, in the discussion that is to follow, to notice them further. It is alleged in the bill, as the truth is, that complainant recovered a number of judgments against Leander B. Reynolds, amounting in the aggregate to quite a considerable sum. Executions issued on these judgments to the sheriff, were returned *nulla bona.* Afterwards this bill was filed by complainants to set aside conveyances shortly before made by the defendant in the execution, of lands which he had previously owned, as fraudulent and void as to his creditors, and to subject the same to the payment of the judgments of complainants. One of the deeds alleged to be fraudulent, was the deed of Reynolds and wife to Elizabeth B. Benton, of a quarter section of land situate in Knox county. Another, was a deed of a lot or piece of land situate in the city of Galesburg, made by Reynolds and wife to Walter S. Hurd. On the hearing, it appears the circuit court dismissed complainant's bill as to both of these tracts of land, and

granted relief on the cross-bills filed by the respective grantees, Mrs. E. B. Benton and Walter S. Hurd. On the appeal of Walter S. Hurd to the Appellate Court for the Second District, from another portion of the decree of the circuit court, complainants assigned cross-errors as to the dismissal of their bill as to Mrs. E. B. Benton, the grantee of the quarter section of land mentioned, and as to the granting relief to her on her cross-bills, but the decree was in all respects affirmed by the Appellate Court, and as complainants have filed no cross-errors in this court on the decision of the Appellate Court, no questions concerning the fairness or validity of the conveyance of the quarter section of land mentioned can be considered by this court on this appeal. No cross-errors have been assigned by complainants or any one else as to that portion of the decree of the circuit court that found the conveyance to Walter S. Hurd was fair and valid, nor to the relief granted to him on his cross-bill concerning the tract of land situate in Galesburg that had been conveyed to him. Only Walter S. Hurd has assigned errors on this record, and so far as this decree affects his land, it is in his favor, and as to the tract claimed by Mrs. Benton, he does not, by his pleadings or otherwise, claim any interest in it. It follows, therefore, that all questions made as to those tracts of land must be considered as disposed of by the decisions of the lower courts, and therefore they are not now before this court, and no further reference will be made to them, unless it may become necessary to do so in considering other questions made on the record.

It is alleged in the bill, the judgment entered up in the Superior Court of Cook county in favor of Walter S. Hurd and against Leander B. Reynolds, was wrongfully confessed, and that the levies made under the execution issued thereon were made for the purpose of covering up the property of the execution debtor, and keeping it from his *bona fide* creditors, and

as to whom the judgment is fraudulent and void. After the hearing of the cause had been commenced, at the June term, 1884, complainants obtained leave from the court to further amend their bill, which they did, and alleged, that on the 11th day of August, 1879, Leander B. Reynolds, then being indebted in the sum before mentioned in the bill, made, executed and recorded a chattel mortgage to Walter S. Hurd, purporting to secure a debt of $1475, due in fifteen months from the date of the mortgage, which mortgage covered substantially all the personal property then owned by Reynolds, subject to execution. It is charged this chattel mortgage was merely colorable, and made to enable Reynolds to cheat and defraud complainants and other creditors. Afterwards, on the 24th of December, 1884, another amendment to the bill was made, to the effect that after the obtaining of the judgment in the Superior Court, Reynolds delivered to the attorneys of Hurd valuable accounts and claims, the property of Reynolds, of the value of $1000, and that his attorneys collected, by execution issued on such judgment and from the accounts, the sum of $4568.68, which sum the attorneys paid over to him, less their fees. It is charged Hurd holds the money, and property obtained under the chattel mortgage, and from the accounts and on the judgment, in trust for the creditors of Reynolds, and should be required to account for the same to complainants. In his original answer, defendant, Hurd, admits he obtained a judgment against Reynolds in the Superior Court, but denies it was obtained by fraud or collusion, or that levies were made on the execution issued on such judgment to cover up the land or other property of Reynolds, to prevent complainants or other creditors from obtaining satisfaction of their judgments. On the contrary, he avers the judgments were obtained for so much money actually due to him from Reynolds. In his answer to the last amendment to the bill, defendant, Hurd, admits the making of the chattel mortgage, as stated in the bill, but denies it

was merely colorable, or that it was made to enable Reynolds to cheat and defraud his creditors.

Among other matters, the court found by its decree that the judgment confessed the 9th of August, 1879, by Reynolds, in the Superior Court, in favor of Hurd, was and is a fraud upon the creditors of Reynolds, and the judgment note on which the judgment was confessed was without adequate consideration, and void as against complainants and other *bona fide* creditors of Reynolds, and was executed for the purpose, and was a part of a scheme to defraud, hinder and delay creditors in the collection of their just claims. The court further found the amount of the judgment so entered is the sum of $4561.68, and after the obtaining of such fraudulent judgment, Reynolds, for the purpose of hindering and delaying and defrauding his creditors, took from his place of business in Chicago, all the books of account, containing a large amount of claims, and delivered the same to the attorneys of Hurd, who accepted the same for him, and that there has been realized upon such claims and judgment, from the assets of Reynolds, for the benefit of Hurd, the sum of $4412, and that sum was realized as early as November 19, 1879. The court also found the chattel mortgage of the date of August 11, 1879, for the sum of $1475, given by Reynolds to Hurd, was executed as a part of a scheme to defeat, defraud and hinder and delay creditors of Reynolds, and was without consideration, and was wholly void as to complainants. The court thereupon decreed that Hurd held the sum realized on the judgment, and the amount of the chattel mortgage, as trustee, for the benefit of complainants in the original bill, and referred the cause to the master to compute the interest on the sums realized upon such claims, at six per cent per annum, on the judgment rendered August 9, 1879, and that he compute the interest at six per cent on the consideration of the chattel mortgage, $1475, from the 11th day of August, 1879. It appears the master found, and

so reported, that there had been realized by Hurd on the judgment of August 9, 1879, the sum of $4412, from which the court ordered that an attorney's fee of $500 should be deducted, which would leave $3712, which, with interest at six per cent on the sum from November 19, 1879, amounts to $5110.36. As to the chattel mortgage of August 11, 1879, for $1475, with interest at six per cent from that time to the date of the report, amounted to $1958.27, which sum, added to the amount found due on the judgment, made a total amount of $7068.63. Exceptions taken to the master's report by Hurd were all overruled, and thereupon the court entered a decree against Walter S. Hurd for the sum of $7068.63, that he pay the same within thirty days from the date of the decree, and in default of such payment that complainants have execution therefor. It was further ordered that Reynolds and Hurd pay the costs of this proceeding, and that Reynolds and Hurd and their attorney deliver at once to the master, each and every book and books of account used in and about the business of Reynolds in Chicago, and all moneys which have come into the hands of either of them from the estate of Reynolds. The usual order for the distribution of the fund to be received under the decree was made. The decree of the circuit court was affirmed in the Appellate Court for the Second District, and Walter S. Hurd brings the cause to this court on appeal.

Narrowing, as must be done, the discussion to that part of the decree of the circuit court that affects Walter S. Hurd, the only party assigning errors in this court, the views entertained on this question may be shortly stated.

It is said there is a misjoinder of matters alleged in the bill, for the reason relief is asked against different defendants for separate and distinct matters that can not be litigated in the same action. This is not true in that sense that would render the bill multifarious. Defendant, Hurd, was a proper party to the original bill, inasmuch as his exe-

cution had been levied on the land which had been conveyed to Mrs. Benton by the failing debtor, and also because he claimed land that had been conveyed to him by the debtor, the validity of which was challenged by the allegations of this bill. Some of these matters ceased to be matters of contention between the parties, but equity having rightfully obtained jurisdiction of the case, will retain it for all purposes germain to the subject matter of the original bill.

As respects the judgment confessed by Reynolds in favor of Hurd, in Chicago, it can hardly be said the testimony overcomes the sworn answer of Hurd as to the actual indebtedness for which it was rendered. It is averred in the answer, the sum for which the judgment was entered was actually due from Reynolds to Hurd. The answer is under oath, and unless overcome by the testimony it must stand as true. All the testimony that militates against the good faith of the consideration of the note on which the judgment was rendered, is the testimony of Murphy and Burke, and treating the witnesses as of equal respectability, that is equally balanced by the testimony of Hurd and Reynolds, both of whom testify the judgment was confessed for an actual indebtedness. That leaves the answer unimpeached, and it must be regarded as true in that respect.

But as to the chattel mortgage, it must be regarded as fraudulent as to the creditors of Reynolds, among whom are complainants. It was not made until after the judgment in Chicago had been confessed, and then Hurd knew that Reynolds was failing and had become wholly insolvent. It seems the chattel mortgage was made and recorded before Hurd arrived at Galesburg, where the mortgagee resided. It is claimed it was given to secure loaned money. But no money was advanced to Reynolds at the time. Even the draft that was given was afterward surrendered, and if the money was paid to Reynolds at all, it was paid to him in small sums, as he desired it. The whole affair has the appearance of a

scheme devised to secure to Reynolds money as he should thereafter need it, and whether it was fraudulent in fact or not, it was fraudulent in law as to creditors. It does not follow, however, that Hurd should be charged, in the account to be taken, with the face value of the chattel mortgage, and interest. Equitably, he should only be charged with what he received for the property embraced in the mortgage, or, at most, with what he might, with reasonable diligence, have made out of the property that came to his hands or to his agent's. Some of the property embraced in the mortgage was claimed by other persons, and certainly he should not be charged with the value of that which did not belong to the mortgagor.

The point is made, the answer of Hurd should stand, because the transcript of the record contains no replication. The decree finds, however, there was a replication, and the case seems to have been tried on the understanding a replication had been filed. There might have been a replication, and it had been lost from the files. However that may be, leave will now be given to file a replication *nunc pro tunc.*

Some equitable disposition should be made of the costs in the trial court. Hurd should not be required to pay all the costs. How that can be best done should be left largely to the discretion of the circuit court. Complainants failed to sustain their bill as to Mrs. Benton, and as to some matters alleged against defendant, Hurd, and these matters should be considered in making an equitable division of the costs.

The decree of the Appellate Court will be reversed, and the cause remanded to the circuit court for further proceedings not inconsistent with this opinion.

*Judgment reversed.*