WILLIAM L. DROLLINGER, Plaintiff-Appellant, *v.* JOHN E. MERRELL *et al.*, Defendants-Appellees.

Fifth District No. 76-238

Opinion filed January 10, 1978.—Supplemental opinion filed on denial of rehearing March 2, 1978.

Hutton, Laury & Hesser, of Danville (Everett L. Laury, of counsel), for appellant.

Jacobs, Williams and Montgomery, Ltd., of Chicago (C. Barry Montgomery, Barry L. Kroll, and David A. Novoselsky, of counsel), for appellees Byrl P. Beckert and McBride's Express, Inc.

Dukes, O'Rourke, Stewart & Martin, Ltd., of Danville (C. W. Dukes, of counsel), for appellee John E. Merrell.

Mr. JUSTICE KARNS delivered the opinion of the court:

We granted plaintiff-appellant, William L. Drollinger, leave to appeal pursuant to Supreme Court Rule 306 (Ill. Rev. Stat. 1975, ch. 110A, par. 306) from an order of the Circuit Court of Christian County granting defendants-appellees, Byrl P. Beckert, his employer, McBride's Express,

Inc., and John E. Merrell, a new trial in plaintiff's action for damages resulting from personal injuries sustained in a multivehicle accident. The jury returned a verdict for plaintiff against the defendants in the sum of $450,000, and in the same trial, a verdict in favor of the defendant, McBride's Express, Inc., on its counterclaim for property damage for $16,000 against co-defendant, John E. Merrell. The decision of the trial court in granting new trials was based on its determination that the verdicts of the jury were hopelessly inconsistent and could not be reconciled on any legally logical basis. With this determination we disagree.

Bridgeport Wholesale Company, alleged to be Merrell's employer, was a defendant; however, the jury found it not guilty and no appeal was taken from that determination. McBride's Express, Inc., did not appeal from the order granting Merrell a new trial on McBride's property damage claim.

On December 3, 1973, at approximately midnight, plaintiff was driving a tractor-trailer vehicle in a southerly direction on Illinois Route 48. Beckert, employed by McBride's Express, Inc., was driving a tractor-trailer in a northerly direction on the same highway. It was raining, but visibility was relatively good. Route 48 intersects Old State Route 29 just east of Taylorville, Illinois. Approximately 600 feet south of this intersection, traffic proceeding in a northerly direction on Route 48 passes under an overpass. While Route 48 is a preferential highway at this intersection, a flashing yellow caution light was directed to northbound traffic on Route 48 one-tenth mile south of the intersection. Beckert, who was familiar with this intersection, testified that he saw plaintiff's vehicle approaching the intersection from the north and estimated that he and plaintiff would arrive at the intersection at the same time.

John E. Merrell was driving in an easterly direction on Old State Route 29; traffic proceeding in this direction was required to stop at the intersection of Old Route 29 and Route 48. A flashing red light cautioned east bound traffic that it was required to stop. Merrell testified that he stopped at the intersection.

Beckert testified he saw Merrell approach the intersection; that he decelerated from 50 M.P.H. when 400 feet from the intersection; and when he saw Merrell stop, he reapplied his foot to the accelerator resuming a speed of approximately 40-45 M.P.H. When he was approximately 100 feet from the intersection, Merrell drove into the intersection. Beckert testified he slammed on the brakes and turned to the left to avoid a collision with Merrell's automobile, attempting, however, not to drive onto a raised median dividing the north-south lanes; nevertheless, the right front of Beckert's tractor struck the right rear of Merrell's car before the latter cleared the intersection. Beckert did not

sound a horn. Merrell testified that he looked before entering the intersection but did not see Beckert's vehicle approaching from the south.

Beckert testified that upon impact, his wheels turned to the right and he was unable to turn back to the left. His tractor and trailer began to jack-knife, and he went off the right shoulder of Route 48. He did not recall the course of his vehicle until it came to rest after a collision with plaintiff's vehicle which was approaching the intersection from the north on Route 48. He did not recall what he did to control his vehicle insofar as braking or steering.

State Trooper Riech traced the course of Beckert's vehicle by examining tire tracks. He was not able to determine if Beckert's vehicle was sliding or whether the brakes had been applied. From his testimony the jury could find that Beckert's tractor-trailer, after the first impact with Merrell's automobile, went onto the east shoulder of Route 48, some 60 feet north of the south edge of the intersection, then proceeded approximately 120 feet on the east shoulder and in the east ditch before reentering the pavement of Route 48. It then angled across the northbound lane and an 11-foot median dividing the northbound and southbound lanes, across the southbound lane, collided with the Drollinger vehicle which had apparently been driven onto the shoulder and came to rest in a ditch on the west side of Route 48. The total distance from the south edge of the intersection to the point where Beckert's vehicle came to rest was approximately 200 feet. Drollinger suffered severe injuries and could not remember the collision.

As noted, the jury returned a verdict in favor of Drollinger and against the defendants Beckert, McBride's Express and Merrell. The jury also returned a verdict against Merrell in favor of McBride's Express on its cross claim for property damage.

A case strikingly similar on its facts is *Martin v. McCarry*, 2 Ill. App. 3d 650, 275 N.E.2d 897 (4th Dist. 1971). In *Martin* a tractor-trailer truck was proceeding in a northerly direction on a two-lane highway while Fanning was driving a bus southerly on the same highway. One Bartok backed his automobile from a driveway into the northbound lane in front of the McCarry tractor-trailer. The road was snow-packed and slippery. The vehicle operated by McCarry jack-knifed when the brakes were applied and struck Bartok's automobile; it then crossed over the southbound lane and struck the bus which had been driven onto the shoulder of the highway.

The bus driver, Fanning, sued Bartok, the driver of the automobile and McCarry, the operator of the tractor-trailer truck and its owner and obtained a verdict and judgment against the truck driver and its owner, but not against the automobile driver. The operator and owner of the truck sued Bartok, the operator of the automobile, and recovered for

personal injuries and property damage respectively. In answer to the contention that the verdicts were inconsistent the court stated:

"There can be little argument but that the truck struck the automobile. The physical facts indicate just that and the picture of the car portrays it. It is not unreasonable to conclude that the jury decided that Bartok violated his duty to the truck driver and the truck owner by having his car stationary in the truck's lane of traffic and that in so doing his conduct was not that of a reasonable prudent person. It then concluded that there was little or no way, road conditions considered, that the truck could have avoided hitting the automobile and that their damage was directly attributable to Bartok.

There was considerable divergence in the testimony concerning the truck's speed as it approached the automobile. Even though there was no way for the truck to miss the automobile, the jury might well have held that the truck driver was breaching his duty to others on the highway in driving too fast, in not seeing the automobile in time, or in not having proper control over his truck so as to keep it in his own lane of traffic. The evidence is undisputed that the truck was in the lane of traffic belonging to the bus and the several complaints so charged. When the truck crossed the center line then and invaded the territory belonging to the bus, the truck driver breached a duty to the occupants, the owner and the driver of the bus. We think that there is just reason for believing that the jury in this case sorted the wheat from the chaff and followed the precise instructions of the court with a degree of perspicacity and understanding for which it might properly be commended. Where different duties are breached in the same occurrence, different and what appears to be perverse verdicts may properly result. We think it clear that these verdicts were justified upon responsible evidence in this record and that they are not per se perverse or inconsistent. Only as to the passengers, the bus driver and the bus owner was the truck violating a duty to them by being in their lane of traffic. That breach of duty did not involve Bartok and hence was not contributory negligence as to him." 2 Ill. App. 3d 650, 656-57, 275 N.E.2d 897, 902.

It appears to us that the same reasoning applies to the instant case and the language of Justice Smith is equally applicable here. We see no significance in the fact that in *Martin* no adverse verdict was returned against Bartok, the operator of the automobile, in favor of the bus driver while here Drollinger recovered against both Beckert and Merrell. There the jury was instructed as here to treat each cause of action separately. In fact, Beckert and McBride tendered a lengthy issues instruction and

damages instructions, which the court gave, setting forth the various allegations of negligence contained in the complaint of Drollinger and McBride's Express' counterclaim, the respective denials and the elements of damages that the jury might consider, that emphasized the separate nature of the actions. These instructions informed the jury that the plaintiff, Drollinger, claimed damages from Beckert and McBride's Express and from Merrell, and that McBride's Express claimed damages from Merrell under its counterclaim. The jury was told that plaintiff might recover from Beckert, McBride's Express and Merrell and that McBride's Express might recover from Merrell on its counterclaim.

■■ The defendants argue that there are significant differences in *Martin*. First, they point out that all the actions were separate causes of action consolidated for trial and that the trial court treated the consolidated actions as separate and distinct. They point out that the trial court gave Illinois Pattern Instructions 41.01 and 41.03 dealing with multiple plaintiffs and defendants respectively; however, IPI 41.03 was given here without objection, and the fact that the actions in *Martin* were consolidated while here the claim of McBride's Express against Merrell was advanced by way of counterclaim is a difference without significance. Consolidation does not sanction otherwise legally inconsistent verdicts. Whether or not the causes had been consolidated in *Martin*, a legally inconsistent verdict in any of the multiple actions would be binding and determinative of potential issues in subsequent actions under principles of estoppel by judgment or collateral estoppel. Different juries may not resolve the same factual dispute in actions between the same parties inconsistently simply because the issue may arise in separate trials, even though different issues are involved. See, *e.g., City of Elmhurst v. Kegerreis*, 392 Ill. 195, 64 N.E.2d 450 (1945); *Schoenbrod v. Rosenthal*, 36 Ill. App. 2d 112, 116, 183 N.E.2d 188, 190-191 (1st Dist. 1962).

Defendants also point out that in *Martin* only the truck driver and owner appealed from the adverse judgment; the automobile driver did not appeal nor did the truck driver and owner offer to relinquish the judgments in their favor against the automobile driver. Here the trial court set aside all verdicts and McBride's Express points to its magnanimity in not appealing the order of the trial court taking away its verdict for $16,000 property damage. We would only observe that the verdict against McBride's Express in plaintiff's personal injury action was $450,000; so when it "openly admits," to use its expression that the verdict in its favor for $16,000 against Merrell is inconsistent with plaintiff's verdict, we must accept this concession with considerable reservation. It is true that *Martin* discusses the inconsistent position of the truck driver and owner in attempting to preserve their judgments against Bartok, and

viscerally the court would react negatively to the posture of the case on appeal. Still, we do not consider this a significant difference.

McBride also argues on appeal that the jury awarded it property damage against Merrell resulting from both the first collision with Merrell and the second collision with the plaintiff, Drollinger; therefore, the argument goes, the jury must have found Merrell's negligence, not Beckert's, the proximate cause of the second collision. At trial, however, McBride argued forcefully that all the damage to its truck occurred in the first collision with Merrell.

Defendants argue that a person in one act cannot be negligent and nonnegligent; that the conduct of Beckert in the operation of the truck cannot at the same time be negligent and nonnegligent; however, we believe this an oversimplification of the principles of duty and proximate cause in a multivehicle collision where each driver owes a separate duty of care to the other drivers. In *Scott v. Fite*, 7 Ill. App. 3d 672, 288 N.E.2d 61 (4th Dist. 1972), in explaining *Martin*, the same court emphasized that *Martin* dealt with the "respective duties in the operation of three vehicles." (7 Ill. App. 3d 672, 673; 288 N.E.2d 61, 62.) As in *Martin*, we are dealing with two separate, distinct collisions. The conduct of Beckert consisted of more than "one act." Beckert owed a separate duty both to Merrell and Drollinger to operate his vehicle with care and caution. Likewise Merrell owed separate duties to Beckert and the plaintiff and others rightfully on the highway.

The jury may have concluded that the negligence of Beckert occurred after his vehicle collided with Merrell. We believe the facts would support a determination that Beckert, whether from speed, inattention or lack of skill, lost control of his tractor-trailer and failed to exercise care in avoiding a collision with the plaintiff who he knew was approaching the intersection from the north. We would also observe that Beckert's vehicle collided with plaintiff's tractor-trailer some 200 feet north of the intersection notwithstanding Beckert's testimony that he thought, when he first observed Drollinger's vehicle, that both tractor-trailers would arrive at the intersection at the same time. The jury might well have concluded that this was significant evidence of the speed of Beckert's truck as it approached the intersection. These allegations of negligence were pleaded and were contained in the issues instruction.

We feel compelled to comment on one other aspect of the trial, although not argued by plaintiff. Numerous instructions were tendered and given. The instruction conference is lengthy and consumes almost 100 pages of the report of proceedings. In discussing the forms of verdict there is a lengthy discussion of the number of possible verdicts and the forms given without objection, permitted, without limitation, any combination of verdicts on the complaint and counterclaim. The trial

court suggested the possibility of inconsistent verdicts and suggested to counsel an instruction that would tell the jury that only certain combinations of verdicts would be proper. In fact, Merrell tendered an instruction on the form of verdicts the jury might return that precluded the verdicts returned. But at the instruction conference, the logic of the instruction was not argued and he acquiesced in the verdicts tendered. He also tendered an instruction that told the jury that if they found Beckert negligent, then they must find for Merrell and against McBride's Express on its counterclaim. However, this instruction was directed to the agency relationship between Beckert and McBride. No argument was made by Merrell regarding the possibility of inconsistent verdicts. In fact, Merrell advanced no argument for the instruction and it was refused as an incomplete, non-Illinois Pattern Instruction on agency.

The Court realized the possibility of inconsistent verdicts and suggested an instruction to prevent such an occurrence. None of the parties responded or made any comment to the court's suggestion other than to state that the court should tell the jury that two verdicts must be returned, one on the complaint and one on the counterclaim, a suggestion not directed to the problem addressed by the court.

■■ ■ Were we to believe these verdicts inconsistent, which we do not, we would have difficulty approving what transpired here where counsel agrees to the form of verdict given the jury notwithstanding the court's admonition that inconsistent verdicts could be returned and its suggestion that the jury be instructed to prevent such an occurrence. While we realize that it is the function of the court to furnish the jury proper forms of verdict, parties cannot invite error by their conduct or inaction and later assign as error that which is so invited in the event the verdict of the jury is not to their liking.

We therefore reverse the judgment of the court granting new trials to Byrl P. Beckert, McBride's Express, Inc. and John E. Merrell, and remand the cause with directions to enter judgment on the verdicts returned by the jury in favor of the plaintiff, William L. Drollinger. McBride's Express, Inc., did not appeal from the judgment of the court awarding John E. Merrell a new trial.

Reversed and remanded with directions.

EBERSPACHER, P. J., and CARTER, J., concur.

SUPPLEMENTAL OPINION ON DENIAL OF REHEARING

Mr. JUSTICE KARNS delivered the opinion of the court:
Defendants McBride's Express, Inc., and Byrl P. Beckert have

petitioned for rehearing arguing that this court would have to find that the trial court committed a clear abuse of discretion before we would be justified in reversing its judgment granting them a new trial. They argue that Supreme Court Rules 306(a)(2) and 366(b)(2)(v) (Ill. Rev. Stat. 1975, ch. 110A, pars. 306(a)(2), 366(b)(2)(v)), require us to examine their motion for a new trial filed in the trial court, then search the record on appeal and uphold the decision of the trial court on any basis that would render its decision correct, even though not briefed and argued before this court as a basis for affirming the trial court in granting a new trial. They cite to us as authority for this proposition such cases as *Di Maso v. Wieboldt Stores, Inc.*, 37 Ill. App. 3d 966, 347 N.E.2d 466 (1st Dist. 1976), and *McNulty v. Hotel Sherman Co.*, 280 Ill. App. 325 (1st Dist. 1935). We do not believe these cases so hold.

■■ The defendants correctly state that the reason assigned by the trial court in granting a new trial is immaterial. Any ground urged as a basis for granting a new trial in the post trial motion may be relied on in the reviewing court to sustain the trial court's action. But it must be relied on and argued before the reviewing court. If the petition for leave to appeal is granted, Supreme Court Rule 306(c) (Ill. Rev. Stat. 1975, ch. 110A, par. 306(c)) allows the respondent-appellee to file an answer in which he may assign any error preserved for review as a basis for sustaining the trial court's action. If the record on appeal designated by the petitioner in his praecipe is not sufficient to bring the matter before the reviewing court, then the respondent may file an additional praecipe. (Ill. Rev. Stat. 1975, ch. 110A, par. 306(c).) But these matters should be briefed and argued before the reviewing court. It is not proper to assign additional reasons to sustain the action of the trial court in a petition for rehearing as is attempted here.

In the instant case, a new trial was granted solely on the basis of the court's determination that the verdicts were inconsistent. We have determined that the trial court was under a misapprehension as to the inconsistency of the verdicts. No question has been properly raised as to the exercise of the trial court's discretion in granting a new trial as suggested in the petition for rehearing.

The petition for rehearing is, therefore, denied.

EBERSPACHER, P. J., and G. J. MORAN, J., concur.